Patricia A. Cochran, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Argued June 8, 1982, before President Judge Crumlish, Jr. and Judges Rogers, Blatt, Craig and MacPhail.

*Leonard I. Sharon,* with him *Joseph M. Devecka,* for appellant.

*David L. Shenkle,* with him *Jay H. Karsch, Eastburn and Gray,* for appellee.

Opinion by Judge MacPhail, September 16, 1982:

Before this Court is the appeal of Patricia A. Cochran (Appellant) from her conviction by the Court of Common Pleas of Bucks County for violating Doylestown Borough Ordinance No. 1980-5, which is

entitled "An Ordinance of Doylestown Borough Prohibiting the Sale or Delivery of Drug Paraphernalia." We now affirm.[1]

## FACTS

Ordinance 1980-5 was enacted by the Doylestown Borough on May 19, 1980. The Ordinance makes it

[u]nlawful for any person, partnership or corporation to sell, possess with intent to sell, deliver or possess with intent to deliver drug parapheralia knowing that it will be used to plant, propogate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance [as defined by The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended.* 35 P.S. §§780-101 to 144.].

The Ordinance also provides an expansive definition of the term "Drug Paraphernalia."[2] Notice of the Ordinance's enactment was sent to Key Records, a retail establishment located within the Borough.[3]

---

[1] Pursuant to Pa. R.A.P. 751, this case was transferred to Commonwealth Court from Superior Court. This Court, by reason of Section 762(a)(4) of the Judicial Code, *as amended*, 42 Pa. C. S. §762(a)(4) has exclusive jurisdiction of appeals from courts of common pleas in cases involving the enforcement of local government criminal ordinances.

[2] After a general definition, 12 specific categories of kits, devices and equipment are itemized as examples of drug paraphernalia including 13 sub-types of "objects". In a separate sub-section, 9 criteria are set forth to be used by the authorities and the court in determining whether or not a particular object is drug paraphernalia.

[3] The record indicates that Key Records was the only establishment to have been sent such notice.

Appellant is a retail sales employee of Key Records. On June 9, June 11 and June 16 of 1980, Appellant was cited[4] for violating the Ordinance by selling, or offering for sale, items alleged to be drug paraphernalia. From her summary convictions on the citations, Appellant appealed to the court of common pleas. After a non-jury trial, the Appellant was found guilty of the citations issued on June 9 and June 11, and not guilty of the citation issued on June 16. Motions in arrest of judgment and for a new trial were denied in an en banc opinion and order filed March 10, 1981. Appellant was sentenced to a fine of $25 and to pay the costs of prosecution.

Appellant has raised three issues on this appeal: 1) is the Ordinance unconstitutionally vague, 2) did Appellant's conviction violate the due process clause of the fourteenth amendment, U.S. Const. Amend. XIV, §1, by being based on intent transferred from remote third party manufacturers, and 3) was her trial counsel ineffective as a matter of law by failing to preserve the issue of whether the Ordinance unconstitutionally impinges on protected rights of free speech?

## GENERAL CONSIDERATIONS

Several general aspects deserve mention before we undertake an analysis of the issues presented. First, much of the doubt about the constitutionality of drug paraphernalia laws in general has been laid to rest by the United States Supreme Court's recent decision in the case of *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, U.S. , 102 S.Ct. 1186 (1982). In that case, which was a pre-enforcement challenge to a drug paraphernalia licensing ordinance, the Court held that that ordinance, which is much less

---

[4] Along with Edward Keyser, the proprietor of Key Records.

detailed than the ordinance now before us, was not facially so overbroad or vague as to offend the Constitution. We, of course, recognize that *Flipside*, being a pre-enforcement facial challenge to a regulatory ordinance, is not determinative of this appeal from a conviction for violating a criminal ordinance, but the case provides guidance with respect to many of the issues presented here.

Secondly, we believe this case is best understood with a dissection of Ordinance 1980-5 so as to determine what elements must be proven by the Commonwealth[5] in order to sustain a conviction. As we read the Ordinance, we discern four distinct elements which must be found from the evidence before a valid conviction can be had:

1) that the Appellant did possess certain objects;

2) that said objects were "drug paraphernalia" as that term is defined by the ordinance;

3) that the Appellant sold, or intended to sell, said objects; and

4) such sale or intent to sell was done "knowing"[6] that the objects would be used in conjunction with prohibited controlled substances.[7]

## VAGUENESS

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we

---

[5] The case was prosecuted in the name of the Commonwealth, although it was prosecuted by an attorney representing the municipality pursuant to Pa. R. Crim. P. 63(d).

[6] As defined by Section 302(b)(2)(ii) of the Crimes Code, 18 Pa. C. S. §302(b)(2)(ii).

[7] These are substantially the same four elements outlined by the trial court in its opinion in support of the denial of the motions for new trial and in arrest of judgment.

insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who must apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (footnotes omitted). It is against these two standards, adequate notice and non-discriminatory application, that we must examine Appellant's vagueness challenge as it applies to her conviction.[8]

Appellant's primary focus in this vagueness challenge concerns the definition of "drug paraphernalia." Admittedly, much of the definition of "drug paraphernalia" depends upon a determination of whether an object is "used, intended for use, or designed for use" with controlled substances. However, "few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions." *Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952) (footnote omit-

---

[8] Appellant did not assert before the trial court any possible infringement of first amendment freedoms arising out or her vagueness challenge, so her challenge to the Ordinance in this regard may only concern the actual application of the Ordinance to her. *See Commonwealth v. Heinbaugh*, 467 Pa. 1, 4, 354 A.2d 244, 245 (1976).

ted). Our own Supreme Court has also stated that "when an ascertainable standard is present in a statute, the violator whose conduct falls clearly within the scope of such standard has no standing to complain of vagueness." *Commonwealth v. Heinbaugh*, 467 Pa. at 7, 354 A.2d at 247. In view of the types of objects for which Appellant was convicted,[9] we find it hard to believe that the Appellant was without notice, or that the enforcement officials were discriminatory[10] in determining, that the objects fell within the definition of drug paraphernalia in the Ordinance.

---

[9] Among these were several carburetor pipes identified by a trained police officer as having as their sole purpose the smoking of hashish or marijuana, two "bongs" identified as devices for smoking marijuana one of which contained instructions to "continue inhaling, release corburator (sic) hole to clear all smoke from the chamber, your bowl should be ready for another hit, but you might not be," two roach clips, one with a marijuana leaf representation on it, a "deluxe seed separator" bearing a superficial resemblance to a kitchen colander but identified by two expert witnesses as having holes therein of a size suitable only for marijuana seeds, a cutting kit consisting of a mirror, a small amber colored bottle, a tube, a utensil with a knife on one side and a small spoon on the other and a razor blade, all of which were identified by an expert witness as having no other use when taken collectively than for setting up lines of amphetamines or cocaine on the mirror for snorting them into the nostrils with the tube, a metal cocaine or "speed" tube with the word "cocaine" printed on it and a specially constructed marijuana sifter with the name "marygin" on the side together with a leaf representation of a cannabis embossed thereon. We would further note that some of the items for which Appellant was convicted are specifically named in Section IC(12) of the Ordinance; therefore, we fail to see how the Ordinance could be considered vague in its application to such items. As for the "designed for use" standard generally, *see Flipside*, U.S. at , 102 S.Ct. at 1194-95.

[10] In *Hejira Corp. v. MacFarlane*, 660 F.2d 1356, 1367-68 (Tenth Cir. 1981) the Tenth Circuit Court of Appeals held that a Colorado law with very similar criteria as are provided in Section II of Ordinance 1980-5 provided sufficient standards to guard against discriminatory enforcement.

In answer to Appellant's claim that she could not be aware of what are prohibited items since, at least in theory, the items for which she was convicted could be used in a legal manner, we point out that Appellant could not be convicted without a determination that she sold the items "knowing" they would be used with prohibited controlled substances. As the U.S. Supreme Court has stated: "This requirement of the presence of culpable intent as a necessary element of the offense does much to destroy any force in the argument that application of the regulation would be so unfair that it must be held invalid." *Boyce Motor Lines v. United States,* 342 U.S. at 342 (footnote omitted). Appellant thus cannot complain that under the Ordinance she was convicted for selling or offering for sale items she did not know were drug paraphernalia since she was found by the trier of fact to have known they would be used with illegal drugs.[11]

Appellant's vagueness challenge must fail.

### Transferred Intent

Appellant contends that her conviction was based upon a transfer to her of the intent of third party

---

[11] The Supreme Court in *Flipside* also gave short shrift to an argument concerning the legal uses of drug paraphernalia:

If Flipside is objecting that the ordinance would inhibit innocent uses of items found to be covered by the ordinance, it is complaining of denial of substantive due process. [This] claim obviously lacks merit. Regulation of items that have some lawful as well as unlawful uses is not an irrational means of discouraging drug use....

The hostility of some lower courts to drug paraphernalia laws—and particularly to those regulating the sale of items that have many innocent uses ...—may reflect a belief that these measures are ineffective in stemming illegal drug use. This perceived defect, however, is not a defect of clarity.

U.S. at    , 102 S.Ct. at 1192 n.9 (citations omitted).

manufacturers that their items be used with illegal drugs and that such a transfer violates due process. Appellant, however, has misconstrued the Ordinance. The trial court did not "transfer" intent from manufacturers to the Appellant; rather, she was convicted for selling or offering to sell drug paraphernalia "knowing" it would be used with prohibited controlled substances. This "knowing" requirement is Appellant's own intent, not a transferred one. While it is true that design characteristics and the advertising accompanying many of the items were considered by the trial court in ascertaining whether Appellant "knew" the paraphernalia would be used with illegal drugs, this was simply the proper use of circumstantial evidence to ascertain intent. *See Commonwealth v. McConnell*, 292 Pa. Superior Ct. 160, 162, 436 A.2d 1201, 1202 (1981).[12]

## TRIAL COUNSEL INEFFECTIVENESS

Appellants' final contention is that her trial counsel was ineffective as a matter of law for failing to preserve for appeal the issue of whether the Ordinance is overbroad, that is, whether freedom of speech is unconstitutionally impinged upon.

"A claim of ineffective assistance of trial counsel is properly raised by an appellant at the earliest stage in the proceeding at which counsel whose effectiveness is challenged is no longer representing him." *Commonwealth v. Upsher*, Pa. , , 444 A.2d 90, 92 n. 3 (1982). Therefore this claim of ineffective assistance is proper before this Court where present counsel differs from Appellant's trial counsel.[13]

---

[12] Appellant has not challenged the sufficiency of the evidence presented to prove the "knowing" requirement.

[13] If ineffectiveness is apparent from the record, our Supreme Court has held that a claim of ineffectiveness can be raised even on appeal where trial counsel serves as appellate counsel. *Commonwealth v. Drake*, 489 Pa 541, 546, 414 A.2d 1023, 1025 (1980).

A two step process is used to evaluate the effectiveness of counsel. First, this Court must determine whether the issue underlying the claim of ineffectiveness is of arguable merit. If the underlying issue is of arguable merit, then we must determine whether counsel's decision not to raise the issue had some reasonable basis designed to effectuate his client's interests. *E.g., Commonwealth v. Burton*, 491 Pa. 13, 18, 417 A.2d 611, 613 (1980); *Commonwealth v. Hubbard*, 472 Pa. 259, 278, 372 A.2d 687, 696 (1977).

Appellant has made two arguments in asserting that this statute is overbroad. First, she contends that a marijuana leaf design on various items was used to prove certain items were drug paraphernalia. Appellant agrues that persons may wish to buy such items for their symbolic expression of a desire to reform marijuana laws. Appellant's second contention is that advertising in the magazine *High Times* was used as evidence of whether an item was drug paraphernalia, and that as a result there was a "chilling effect" on the desire of retailers to carry the magazine since its advertising could result in a finding that other items which they carry would be labeled as drug paraphernalia.

*High Times*, or for that matter any other publication, is not barred by the Ordinance, however. Literature is not regulated; therefore, the Ordinance does not directly infringe noncommercial speech. *Flipside*, U.S. at , 102 S.Ct. at 1192. Further "[a]lthough drug-related designs or names on cigarette papers may subject those items to regulation, [this] does not restrict speech as such, but simply regulates the commercial marketing of items that the labels reveal may be used for an illicit purpose." *Id*. Quite obviously, the presence of a drug related design on an object does not make it drug paraphernalia *per se* under Ordinance

1980-5, so there can be no fear that true symbolic speech is banned by the Ordinance.[14]

Concerning the "chilling effect" on the distribution of *High Times*, it is quite clear from our prior description of the elements of Ordinance 1980-5 that the only retailers who must be concerned about the advertising in that magazine are those retailers who offer for sale items "knowing" that they will be used for illicit drugs. It is only they who run the risk that such items will be declared drug paraphernalia. Other retailers obviously have no reason to fear prosecution and should not be inhibited in any way by the Ordinance from selling *High Times*.[15]

Therefore, we do not believe that Appellant was ineffectively represented by counsel since the asserted issue is without arguable merit.

## ORDER

The order of the Court of Common Pleas of Bucks County, dated March 10, 1981, is hereby affirmed.

---

[14] For example, a shirt merely embossed with the word "cocaine", would not subject a seller to prosecution under the Ordinance.

[15] The mere advertisement of an object in *High Times*, without more, obviously would be insufficient to sustain a conviction of a seller of that object under the ordinance since the "knowing" requirement would not be met.